***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. It is stipulated that the parties are properly denominated in the caption.
2. It is stipulated that an employee/employer relationship existed at the time of the alleged accident.
3. It is stipulated that AIG Claims Services, Inc., was the carrier on the risk at the time of the alleged accident.
4. It is stipulated that as of the date of the alleged accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. It is stipulated that all parties are before the Commission for hearing and the Commission has jurisdiction of the parties and the subject matter.
6. It is stipulated that the date of the alleged accident was September 20, 2001, and took place in Rocky Mount, North Carolina.
7. The average weekly wage will be determined from a Form 22 to be submitted by defendants at the hearing.
8. Plaintiff's issues to be heard are: Was the medical treatment which plaintiff underwent reasonably required to effect a cure, give relief, or lessen the period of disability such that defendants are required to pay for this medical treatment pursuant to N.C. Gen. Stat. § 97-25? Did plaintiff suffer any temporary total disability as a result of the accident on September 20, 2001? Did plaintiff suffer permanent scarring as a result of the accident on September 20, 2001?
9. Defendants' issues to be heard are: Whether plaintiff sustained a compensable injury by accident on September 20, 2001, arising out of and in the course of his employment? To what workers' compensation benefits, if any, is plaintiff entitled? Whether plaintiff constructively refused suitable employment upon his termination for fault and/or misconduct unrelated to his compensable injury in accordance with Seagraves v. The AustinCompany of Greensboro.
10. The parties stipulated into evidence Stipulated Exhibits #1 and #2 consisting of plaintiff's medical records and an Industrial Commission Form 22 Wage Chart. In addition, the parties stipulated into evidence employment security commission records labeled Plaintiff's Exhibit #1 and additional medical records post-hearing by letter from plaintiff's counsel dated October 3, 2003.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 34 years old, born on August 2, 1969, and had obtained a high school diploma. Plaintiff's work history includes driving a taxicab for approximately four years.
2. Plaintiff began work for defendant-employer on approximately August 2, 2000. Plaintiff was originally hired as a truck driver; however, after almost a year as a driver, plaintiff became a plant helper. As a plant helper, plaintiff cleaned the quarry yard, serviced rock crushers, and performed maintenance of the yard. Part of plaintiff's routine was to check the rock crushers each day to ensure proper function. The crushers broke larger rock into smaller rock. One crusher was quite large and had to be kept "screwed down" which required plaintiff to walk around a platform situated around the open crusher, visually check the crusher and hit screws or pins with a hammer. Bits of rock and dust "jumped out" or flew from the crushers according to plaintiff as well as his supervisor, Gary Poole, and a co-worker, Fred Fox. While plaintiff wore safety glasses to work around the crushers, the glasses were not goggles but similar to traditional eyeglasses.
3. According to plaintiff, he earned $10.35 per hour for approximately 10 hours per day. Further, plaintiff indicated that he worked approximately 5 to 6 days per week with some overtime for which he received time and a half pay. An Industrial Commission Form 22 Wage Chart was submitted by defendant-employer, which indicates that plaintiff has an average weekly wage of $483.81 yielding a weekly compensation rate of $322.56.
4. According to plaintiff, on Thursday, September 20, 2001, he was working in the yard with Fred Fox observing and checking crushers. At around 4:00 p.m., plaintiff, who was wearing the safety glasses similar to eyeglasses, checked a crusher and dust-like rock debris flew up into his face into his right eye closest to his ear. While Mr. Fox did not see anything fly into plaintiff's eye, he remembers plaintiff saying that something was in his eye. Mr. Fox instructed plaintiff to report any incident; however, he was not privy to the details of any reporting. While plaintiff contends he reported the incident to his supervisor Mr. Poole on the day of the incident, Mr. Poole contends that plaintiff did not report the incident until the next day, Friday September 21, 2001, regardless of the indication to the contrary on the Form 19, which was completed by another individual.
5. Plaintiff testified that he left work on September 20, 2001 and went to the emergency room for treatment but found it too crowded and left to treat himself at home with drops and a compress. Plaintiff returned to work the next day, Friday September 21, 2002 but left after talking to Mr. Poole. According to Mr. Poole, plaintiff requested to see a doctor and was instructed to bring a doctor's note when he returned. Mr. Poole testified that plaintiff indicated he would tell the doctor that he got grass in his eye mowing his lawn. However, plaintiff denied making this statement. While plaintiff contends that he returned to the emergency room at Nash General Hospital on September 21, 2001 and September 24, 2001 for treatment and in fact gave a note to Mr. Poole, there is no evidence of record of any treatment for this incident at Nash General's Emergency Room, although there are records for unrelated treatment on other occasions.
6. Plaintiff's eye was still sore over the weekend and plaintiff treated himself. It is unclear from the record whether plaintiff returned to work on Monday September 24, 2001. However, sometime either Friday or Monday, or on both occasions, Mr. Poole requested a doctor's note but plaintiff did not have one. Plaintiff did not return to work Tuesday or Wednesday September 25 or 26, 2001. According to Mr. Poole, plaintiff did not contact him regarding the absences nor did Mr. Poole receive any message that plaintiff had attempted to call; however, plaintiff contends that he contacted Mike or Earl at the front desk. Defendant-employer considered plaintiff's absences unexcused and terminated plaintiff who had been warned in writing about tardiness in mid-September 2001.
7. On Thursday September 27, 2001, plaintiff was seen by Dr. David R. Gorby, an expert in family medicine. Plaintiff complained of a foreign body sensation in his right eye on the side closest to his ear but an examination revealed no foreign body, only irritation and a possible infection. Plaintiff did not complain of blurred vision. Dr. Gorby diagnosed plaintiff with an upper eye lesion, chalazia and a blocked mucous gland, consistent with a sty. While Dr. Gorby indicated that it was unlikely that a foreign body or a rock or debris would lodge itself in plaintiff's mucous glad, Dr. Gorby nevertheless indicated that plaintiff's reported history of injury could cause plaintiff's eye condition, in particular if plaintiff rubbed his eye irritating it. Dr. Gorby removed plaintiff from work until Monday October 1, 2001, prescribed ointment and referred plaintiff to Watson Eye Associates.
8. Plaintiff planned to return to work on October 1, 2001 but learned from a telephone call between his wife and defendant-employer that he had been terminated. Plaintiff was not removed from work by any doctor after October 1, 2001. Plaintiff began to seek employment and draw unemployment benefits, which were disputed by defendant-employer.
9. On February 21, 2002, plaintiff was seen at Watson Eye Associates at which time he reported being hit in the eye with rock on September 28, 2001. No sign of prior injury was noted and plaintiff was diagnosed with a hordeolum or sty. Plaintiff was instructed to use a hot compress and massage. Plaintiff was not restricted from work.
10. On February 25, 2002, plaintiff returned to Watson Eye Associates and indicated that his right eye was still sore and that the compress had been ineffective. Plaintiff also complained of blurry vision three to four times per day. Plaintiff was "reassured" and diagnosed with a very small hordeolum and instructed to use a hot compress three times per week. Plaintiff again was not restricted from work.
11. Plaintiff has proven by the greater weight of the evidence that he sustained an interruption of his usual work routine by the introduction of unusual circumstances when dust or debris flew into his right eye on September 20, 2001, resulting in an irritation and a sty.
12. The medical treatment which plaintiff received from Dr. Gorby and Watson Eye Associates was reasonably required to effect a cure, provide relief or lessen the period of plaintiff's disability. According to the evidence of record, there is no additional medical treatment required at this time.
13. As a result of his injury by accident, plaintiff was unable to work due to a foreign body sensation in his right eye and pain from September 21, 2001 until he was returned to work by Dr. Gorby on October 1, 2001. However, plaintiff has failed to prove that he was disabled after October 1, 2001. Furthermore, plaintiff has failed to prove any that he sustained any permanent partial impairment or scarring as a result of the injury by accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his right eye resulting in irritation and a sty. N.C. Gen. Stat. §97-2(6).
2. Plaintiff has the burden of proving the extent of disability and plaintiff has failed to prove that he was disabled on or after October 1, 2001. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
3. Due to the seven-day waiting period under the statute, plaintiff is entitled to temporary total disability from September 28, 2001 until October 1, 2001 at a weekly rate of $322.56. N.C. Gen. Stat. §§ 97-28; 97-29.
4. Defendants are entitled to a credit for any unemployment benefits which plaintiff received for the period of his disability. N.C. Gen. Stat. § 97-42.1
5. Plaintiff is entitled to no permanent partial disability or compensation for scarring. N.C. Gen. Stat. § 97-31.
6. Plaintiff is entitled to all reasonably necessary medical expenses incurred with Dr. Gorby and Watson Eye Associates related to his injury by accident, which tended to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability from September 28, 2001 until October 1, 2001 at a weekly rate of $322.56, subject to defendants' credit for unemployment benefits, to the extent that any unemployment was paid to plaintiff for such period, and a reasonable attorney's fee approved herein.
2. Defendants shall pay for plaintiff's reasonably necessary medical expenses incurred with Dr. Gorby and Watson Eye Associates related to his injury by accident, which tended to effect a cure, provide relief or lessen the period of disability. This shall include reimbursement to plaintiff for any out-of-pocket expenses for office visits to Dr. Gorby and Watson Eye Associates as well as any payments for the ointment prescribed by Dr. Gorby.
3. Plaintiff's counsel is entitled to one-fourth of the lump sum due plaintiff to be deducted and forwarded directly to plaintiff's counsel.
4. Defendants shall bear the costs due the Commission and the expert witness fee approved by previous order, if not already paid.
This the 30th day of April 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DCS/mlb